**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

———————————————————————————

EARL H. L.,

                                        Plaintiff,

v.                                                                5:23-CV-00643 (TJM/ML)

MARTIN O'MALLEY,
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION, [1]

                                        Defendant.

———————————————————————————

**APPEARANCES:**                                **OF COUNSEL:**

HILLER COMERFORD INJURY & DISABILITY LAW   JUSTIN M. GOLDSTEIN, ESQ.
 *Attorney for Plaintiff*
6000 N. Bailey Ave., Suite 1A
Amherst, New York 14226

UNITED STATES ATTORNEY'S OFFICE            CARLA B. FREEDMAN, ESQ.
NORTHERN DISTRICT OF NEW YORK
 *Attorney for Defendant*
100 S. Clinton St.
Syracuse, NY 13261

SOCIAL SECURITY ADMINISTRATION            VERNON NORWOOD, ESQ.
OFFICE OF GENERAL COUNSEL
 *Attorney for Defendant*
6401 Security Boulevard
Baltimore, MD 21235


**MIROSLAV LOVRIC**, United States Magistrate Judge

<u>**REPORT AND RECOMMENDATION**</u>

———————————————

[1] Martin O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this suit.

This matter was referred to the undersigned for report and recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. This case has proceeded in accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 11, 13, 14.) Oral argument was not heard. For the reasons discussed below, the Court recommends the Commissioner's decision denying Plaintiff's disability benefits be affirmed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 8, 1961. (Administrative Transcript at 494.[2]) He completed high school up to 10th grade but did not graduate or obtain a GED. (T. at 309.) Plaintiff filed for Disability Insurance Benefits ("DIB") on July 9, 2021. (T. at 285.) Plaintiff also filed for Supplemental Security Income ("SSI"). (T. at 287.) Plaintiff alleged an onset date of December 31, 2019, in both applications. (T. at 285, 287.) He alleges a disability as a result of lower back pain caused by degenerative spondylosis of the lumbosacral spine, poor sight and hearing, chronic obstructive pulmonary disease ("COPD"), depression, and post-traumatic stress disorder ("PTSD"). (T. at 54, 345.) Plaintiff's SSI and DIB claims were initially denied on November 4, 2021. (T. at 68, 84.) He submitted a request for reconsideration on November 12, 2021. (T. at 160.) Plaintiff's claims were denied at the reconsideration level on January 19, 2022. (T. at 105, 122.)

---

[2] The Administrative Transcript is found at Dkt. No. 8. Citations from the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns. All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on February 2, 2022.  (T. at 206.)  A telephone hearing was scheduled for October 31, 2022.  (T. at 245.)  ALJ Jeremy Eldred conducted the October 31, 2022, hearing and took testimony from Plaintiff as well as an impartial Vocational Expert ("VE").  (*See* T. at 28-42.)  On November 21, 2022, the ALJ issued a written decision finding Plaintiff was not disabled under the SSA.  (T. at 23.)  Plaintiff requested review of the ALJ's decision by the Social Security Appeals Council on December 5, 2022.  (T. at 282.)  The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council denied Plaintiff's request for review on April 27, 2023.  (T. at 1.)  Plaintiff timely commenced this action on May 30, 2023.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013).  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence

means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *See Rutherford*, 685 F.2d at 62.

### B.  Standard for Benefits[3]

To be considered disabled, a plaintiff seeking disability benefits must establish that they

---

[3] While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) whether the claimant has a severe impairment or combination of impairments;
>
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments;
>
> (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and
>
> (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (spacing added.); *see also Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets their burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

In addition to the typical five-step analysis outlined in 20 C.F.R. § 404.1520a, the ALJ must apply a "special technique" at the second and third steps to evaluate alleged mental impairments. *See id.* SSR 96-8p stresses that the "special technique" described in 20 C.F.R. § 404.1520a is *not* an RFC assessment, and further, the mental RFC assessment used at steps four and five "requires a more detailed assessment." SSR 96-8P (S.S.A. July 2, 1996). This "special technique" is used by ALJs to determine, as a threshold matter, whether a claimant has one or more medically determinable mental impairments. *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 151 (N.D.N.Y. Aug. 17, 2021). If the claimant suffers from one or more impairments, "[t]his technique also enables administrative law judges to determine whether [those] medically determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.*

At the first step of this special technique, the ALJ must evaluate "symptoms, signs, and laboratory findings" to determine whether the claimant has one or more medically determinable mental impairments. 20 C.F.R. § 404.1520a(b)(1). If so, at step two of the special technique the

ALJ must rate the degree of functional limitation that results from the medically determinable

mental impairment(s).  20 C.F.R. § 404.1520a(b)(2).  This involves the consideration of the

degree of functional limitation present in "four broad functional areas": (1) understanding,

remembering or applying information; (2) interacting with others; (3) concentrating, persisting,

or maintaining pace; and (4) adapting and managing oneself.  20 C.F.R. § 404.1520(c)(3).[4]

These four functional areas are measured on a five-point scale that ranges between

"none," "mild," "moderate," "marked," and "extreme," with the last point on the scale

representing "a degree of limitation that is incompatible with the ability to do any gainful

activity."  20 C.F.R. § 404.1520a(c)(4).  If, however, the degree of limitation in each of these

areas is "none" or "mild," the impairment will be considered non-severe absent evidence that

"otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do

basic work activities."  *Id.* § 404.1520a(d)(1); *see also Ornelas-Sanchez v. Colvin*, 632 F. App'x

48 (2d Cir. 2016) (ALJ failed to properly follow the special technique, and effective review was

frustrated, where he only "conclusory noted" that the record showed that plaintiff's impairments

caused more than minimal functional limitations and interfered with her ability to perform some

basic work-related activities.)

### C.  Standard for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for

claims filed after March 27, 2017,[5] and several of the prior Social Security Rulings, including

---

[4] These areas of functioning, also known as "B Criteria," were revised on January 17, 2017.
Prior to January 17, 2017, they were known as "activities of daily living," "social functioning,"
"concentration, persistence, or pace," and "episodes of decompensation."

[5] Plaintiff's application was filed January 22, 2021.  T. at 22.  Thus, the new regulations apply in
his case.

SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the 2017 regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Mark P. O. v. O'Malley,* No. 5:23-CV-00186 (MAD), 2024 WL 1219632, at *4 (N.D.N.Y. Mar. 20, 2024) (internal citation omitted).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule. *Id.*

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  *Andrew G.*, 2020 WL 5848776, at *5 (quoting 20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2)).  With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(1),

416.920c(c)(1)). The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)).

An ALJ must "'articulate how [he] considered the medical opinions' and 'how persuasive [he] find[s] all of the medical opinions.'" *Brian O. v. Comm'r of Soc. Sec.*, No. 1:19-CV-983 (ATB), 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § § 404.1520c(a)-(b)(1), 416.920c(a)-(b)(1)). Furthermore, although an ALJ is specifically required to "explain how [she] considered the supportability and consistency factors," "an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)).

### D.  Standard for ALJ Evaluation of Symptoms

In evaluating a plaintiff's residual functional capacity ("RFC") for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9

(S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[6]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing *inter alia* 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[7]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence.  *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p).  The ALJ must assess the claimant's subjective complaints by

---

[6]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character."  SSR 16-3p, 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

[7]  The court in *Barry* also cited SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id.*; *see also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.    THE ALJ'S DECISION

In his November 21, 2022, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. at 15.) As an initial matter, the ALJ determined that Plaintiff met the insured status requirements of the SSA through December 31, 2022. (T. at 16.) At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* Next, the ALJ determined that Plaintiff suffers from the following severe impairments: "mild degenerative spondylosis of the lumbosacral spine and chronic obstructive pulmonary disease." (T. at 17.)

11

The ALJ then determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ then found, based on the above-stated impairments, Plaintiff has the RFC to perform "medium work," "except he can climb or stoop frequently, and must avoid exposure to concentrated dust, odors, fumes, or gasses." *Id.* The ALJ determined that Plaintiff would be unable to perform any past relevant work, was closely approaching retirement age, and has a limited education. (T. at 22.) The ALJ found that there are significant jobs in the national economy that the claimant can perform, such as "hospital food service worker," "machine packager," and "amusement park worker." (T. at 22-23.) Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from December 31, 2019, until the date of the ALJ's decision, November 21, 2022. *Id.*

## IV.    THE PARTIES' CONTENTIONS

Plaintiff contends that the ALJ failed to appropriately evaluate their subjective complaints of pain, by failing to identify inconsistent evidence and failing to appropriately consider Plaintiff's activities of daily living ("ADLs"). (Dkt. No. 11 at 9, 16-17.) Plaintiff also argues that the ALJ's assessment of lay testimony from Plaintiff's roommate was erroneous, and that the ALJ failed to adequately consider why Plaintiff's treatment history is limited. *Id.* at 11-14. Plaintiff further contends that the ALJ's analysis of the medical opinion evidence is legally erroneous because it does not consider consistency with the medical record evidence. *Id.* at 17-18. Plaintiff argues finally that the ALJ failed to support their decision with substantial evidence when they relied on the opinions of non-examining state reviewing physicians who consulted extra-record evidence. *Id.* at 5, 21-23.

Defendant argues that the ALJ appropriately considered the medical opinion evidence according to the correct legal standards. (Dkt. No. 13 at 9-10.) Defendant notes that it is not the duty of the reviewing court to reweigh the evidence, and so they argue that this court should dismiss any claim made on the basis that the ALJ should have considered the evidence differently. *Id.* at 11. Defendant argues that the ALJ supportably identified inconsistencies between Plaintiff's subjective complaints and ADLs and the medical opinion of record. *Id.* at 11-12. Defendant argues finally that the ALJ properly developed the record, and that obtaining Plaintiff's prior case filed was not necessary. *Id.* at 15.

## V.    THE COURT'S ANALYSIS

### A.    The ALJ appropriately considered Plaintiff's complaints of pain, self-reported ADLs, and lay witness testimony from Plaintiff's roommate.

Plaintiff claims the ALJ erred when evaluating his symptomology by failing to identify an inconsistency between Plaintiff's subjective complaints and the medical record evidence, and by failing to appropriately consider his ADLs. (Dkt. No. 11 at 9, 16-17.) "[E]ligibility for disability benefits is not contingent on a claimant being rendered completely incapacitated." *Shawn H. v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (citing *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988)). In considering a claimant's symptoms, an ALJ *must* "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 404.1529(c)(4).

To this end, Plaintiff's Function Report states that he "hurts every day" and can "barely move" in rainy and cold conditions. (T. at 345.) The "top of his back is permanently bent over. Sometimes bottom of back is bent for days and he can't straighten up … ." *Id.* "His legs and

arms cramp up. He gets dizzy and weak easy. Falls to sleep a lot during day, sleeps at night. His hands hurt and sometimes can't grip well. Feet hurt all the time." *Id.* Plaintiff's reported ADLs are limited, consisting mostly of basic food preparation and care for a pet dog. (T. at 346.) Plaintiff has held a variety of physically intense jobs, beginning as an oil rig worker at 17, which he claims to no longer be able to perform. *Id.* He reports sleeping more than he used to, because of exhaustion and physical pain. *Id.* Plaintiff avoids changing clothes for days at a time because of his pain, typically showers about twice a month ("is a big deal for him – hard"), receives assistance cutting his hair, avoids shaving because of the pain, suffers occasional incontinence, and drives "only during day, not in cities … ." *Id.* Plaintiff "helps with burning paper trash," "[c]an help with riding lawn mower – takes days," and "[o]ften can do nothing for days, barely feeding self." (T. at 347.) Plaintiff's hobbies include music and watching "old Western movies." (T. at 349.) He socializes on the phone, and "doesn't go anywhere regular … ." *Id.* He used to "snowmobile + go camping and go to music festivals etc. Now just stays home unless someone takes him." *Id.* Plaintiff reports being able to move 500 feet at a time by "push[ing] through pain." (T. at 350.) Plaintiff uses a cane and has had "braces on furniture" installed to help with mobility." (T. at 351.)

At the hearing, Plaintiff testified to experiencing pain so severe he "can't hardly move." (T. at 34.) Plaintiff reported that his arthritis can keep him in bed for days at a time. *Id.* He noted that he is unable to walk significant distances, and is forced to stop and catch his breath after walking the length of his yard. (T. at 35-36.) Plaintiff tries "not to pick anything up too heavy" to avoid "popping [his] back out because it hurts so bad." (T. at 36.) Plaintiff testified to ADLs including riding a lawnmower, taking care of his dog, cooking a few times a week, doing laundry and a little cleaning, and accompanying a friend to the store. (T. at 36-38.) Plaintiff also

mentioned that breathing "tires [him] out," and has caused him enough trouble that he is seeing a specialist despite his fear of doctors.  (T. at 38; *see* T. at 34-35.)

The ALJ addressed Plaintiff's complaints of "arthritis in his back as well as shortness of breath" in his decision.  (T. at 18.)  The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's statements regarding the "persistence and limiting effect" of his symptoms to be "not entirely consistent" with the evidence in the record.  (T. at 19.)  The ALJ cited to the generally positive results of Plaintiff's consultative examination, as well as his lack of treatment "including no specialized orthopedic or pain management treatment" since the onset date.  *Id.*  The ALJ addressed Plaintiff's "moderate [pulmonary] obstruction and low vital capacity due to restriction" by noting that he is not receiving treatment and did not "exhibit any on-going fatigue or respiratory deficits during physical examinations."  *Id.*  The ALJ noted that Plaintiff's respiration rate ranged "from 18 to 20" with an oxygen saturation "ranging from 96% to 99%" during two hospitalizations in 2019 and 2022, that he was not fatigued or in any acute distress during his consultative examination, that he needed no assistance moving during the exam, and that he admitted to smoking a pack of cigarettes a day.  *Id.*

The ALJ contrasted Plaintiff's claims of difficulty seeing and hearing with his lack of treatment for those conditions, activities of daily living, and examination results.  (T. at 20.)  The ALJ found that Plaintiff's complaints regarding cramping, falling asleep, becoming dizzy and weak easily, and pain in his hands and feet was "not supported by any objective physical findings or treatment records."  *Id.*  The ALJ also dismissed Plaintiff's mental impairments as "inconsistent with his lack of psychiatric abnormalities during examinations and lack of mental health treatment."  *Id.*  The ALJ found Plaintiff's ADLs not entirely consistent with his severity

of symptoms, because he reported being able to dress, bathe, and groom himself, as well as cook, clean, and drive a car.  *Id.*

    The Court finds that the ALJ properly considered Plaintiff's symptomology and ADLs according to the correct legal principles.  An ALJ must consider "descriptions and observations of [a claimant's] limitations … including limitations that result from [a claimant's] symptoms, such as pain … ."  20 C.F.R. § 404.1545(a)(3).  An ALJ "'is required to take the claimant's reports of pain and other limitations into account,'" but they are "'not required to accept the claimant's subjective complaints without question[.]'"  *Richards v. Colvin*, No. 3:12-CV-1086, 2015 WL 1472039, at *7 (N.D.N.Y. Mar. 31, 2015) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).  A claimant's "symptoms, including pain, will be determined to diminish [a claimant's] capacity for basic work activities" to the degree that they "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(c)(4).  "If an ALJ decides to reject subjective testimony concerning pain and other symptoms, [they] must do so explicitly and with sufficient specificity to enable the reviewing court to decide whether there are legitimate reasons for the ALJ's [disbelief] and whether there is substantial evidence to support his determination."  *Richards*, 2015 WL 1472039, at *7 (citing *Tome v. Schwiker*, 724 F.2d 711, 713 (8th Cir. 1984); *Valente v. Sec. of Health and Hum. Serv.s*, 733 F.2d 1037, 1045 (2d Cir. 1984)).

    The ALJ cited the subjective testimony that they found inconsistent with the objective medical evidence and explained their determination with sufficient specificity that they have met the deferential substantial evidence standard.  *See Shari L. v. Kijakazi*, No. 8:20-CV-1266 (ATB), 2022 WL 561563, at *12 (N.D.N.Y. Feb. 24, 2022) (stating that "An ALJ's evaluation of a social security claimant's subjective symptoms 'is entitled to substantial deference by a

reviewing court.'") (quoting *Rivera v. Comm'r of Soc. Sec.*, 368 F.Supp.3d 626, 645 (S.D.N.Y. 2019)).  Plaintiff's back pain could be accounted for by his "mild degenerative spondylosis," as the ALJ noted, but Plaintiff was not undergoing any sort of treatment at the time of the ALJ's decision for a condition that he describes as preclusive of gainful employment and others describe in terms of a profound disability.  (T. at 19; *see* T. at 36, 345-346.)  An ALJ is "entitled to rely not only on what the record says, but also on what it does not say," and the ALJ here has thoroughly explained how the objective medical evidence does not reflect the level of severity reported by the Plaintiff.  *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)).  The applicable standard of review for an ALJ's evaluation of subjective symptoms is "substantial evidence," and "the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  The ALJ has met their burden here, and this Court will not reweigh the evidence presented at the administrative hearing. *See Warren v. Comm'r of Soc. Sec*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).

As to Plaintiff's argument that the ALJ failed to address lay testimony by Plaintiff's roommate, the indicated statement is "[e]vidence from [a] nonmedical source[]" because it relates directly to the issues of Plaintiff's symptoms and ADLs.  20 C.F.R. § 404.1513a(a)(4).

The Social Security Administration "consider[s] evidence to be inconsistent when it conflicts with other evidence …," in which case they "will consider the relevant evidence and see if [they] can determine whether [a claimant] is disabled on the evidence [they] have." *Id.* §§ 404.1520b(b), (b)(1).  The ALJ summarized the third-party statement in his decision, and determined that it was not entirely consistent with the objective medical evidence and the results of Plaintiff's consultative examinations.  (T. at 18-20.)  Specifically, the ALJ contrasted the assertion by Plaintiff's roommate that "the claimant is unable to see or hear" with his lack of treatment for these conditions, his relatively normal examination results, and his ADLs which include driving (T. at 20 (referencing T. at 345, 404, 37)); the ALJ noted that the statements about cramping, falling asleep, becoming weak and dizzy, and hand and foot pain are not supported by any evidence in the record (*Id.* (referencing T. at 345)); the ALJ noted that the claims regarding mental impairments are inconsistent with Plaintiff's lack of treatment as well as the normal result of his consultative examination (*Id.* (citing 393-395)); and finally, the ALJ outlined an inconsistency between the roommate's statements about Plaintiff's symptoms and Plaintiff's own statements about his ADLs (*Id.* (citing T. at 395, 403, 478)).

"In our review, we defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).  The ALJ appropriately considered and discounted the lay testimony of Plaintiff's roommate.  *See Teresi v. Comm'r of Soc. Sec.*, 19-CV-1268, 2020 WL 5105163, at *14 (S.D.N.Y. Aug. 31, 2020) (holding that an ALJ's discounting of lay testimony was not erroneous when he "properly evaluated [the] testimony and identified certain inconsistencies.")  Even if the ALJ did not respond to every point raised in the lay testimony, this

Court can "'glean the rationale of [the] ALJ's decision' based on the record." *Id.* (citing *Mongeur v. Hecker*, 722 F.2d 1033. 1040 (2d Cir. 1983)).

Likewise, Plaintiff argues that the ALJ "failed to consider why Plaintiff lacked treatment." Dkt. No. 11 at 13. The ALJ considered this issue, and his resolution of conflicting evidence is afforded deference. *Cage*, 692 F.3d at 122. The ALJ noted that Plaintiff "avoids seeing doctors due to anxiety," but "a consultative examining psychologist concluded that the claimant has no mental health diagnosis." (T. at 20 (referencing T. at 395)). Plaintiff's argument that "it is unclear how Plaintiff can provide medical evidence proving that he had anxiety when his anxiety is relating to going to the doctor" is reasonable, but unavailing considering the normal results of his mental status examination. (Dkt. No. 11 at 14; *see* T. at 394-95.) "'Where, as here, a claimant has sought little-to-no treatment for an allegedly disabling condition, [his] inaction may appropriately be construed as evidence that the condition does not pose serious limitations.'" *Diaz-Sanchez v. Berryhill*, 295 F. Supp 3d 302, 306 (W.D.N.Y. 2018).

The case at hand is readily distinguishable from those cited for support on this issue in Plaintiff's brief. (*See* Dkt. No. 11 at 13-14.) Plaintiff has not been diagnosed with a psychological condition, and has not provided a reason for his lack of treatment beyond his own claim that doctor visits make him anxious. (T. at 20, 395.) In contrast, the claimant in *Krach v. Commissioner of Social Security*, cited in Plaintiff's brief, had "an Axis I and II diagnosis of recurrent major depression," and had been prescribed SSRIs, but discontinued using them when "she thought one made her shake." No. 3:13-CV-1089 (GTS/CFH), 2014 WL 5290368, at *6 (N.D.N.Y. Oct. 15, 2014). Thus, "'good reasons' exist[ed] for failing to follow the prescribed treatment." *Id.* at *5 (quoting *Stockwell v. Astrue*, No. 1:12-CV-00826 (MAD), 2013 WL 4508438, at *7 (N.D.N.Y. Aug. 23, 2013)). Plaintiff's brief identifies other "good reasons" that

have been recognized by the courts: "religious objections, lack of ability to pay, [or] significant risks associated with treatment." (Dkt. No. 11 at 13 (citing *Krach*, 2014 WL 5290368, at *5)). None are relevant to this proceeding.

There are likewise none of the concerns present in *Escalera v. Commissioner of Social Security*, No. 19-CV-21 (HBS), 2020 WL 2465085, at *4 (W.D.N.Y. May 13, 2020), cited by Plaintiff, where the claimant had a diagnosed mental illness, a self-reported family history of mental illness, and "multiple psychiatric problems that might have affected plaintiff's ability to follow treatment … ." The court in *Escalera* correctly noted "Courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Id.* (quoting *Cornell v. Astrue*, No. 7:11-CV-1064 (GTS), 2013 WL 286279, at *8 (N.D.N.Y. Jan. 24, 2013)). However, Plaintiff in this case has not identified any mental health diagnoses that the ALJ missed or ignored, and the ALJ's resolution of this issue should thus be afforded deference. *Cage*, 692 F.3d at 122.

### B. The ALJ's analysis of the medical opinion evidence was not legally erroneous because it adequately addressed the consistency factor.

An ALJ must consider all of the medical opinions and prior administrative medical findings, "evaluate [their] persuasiveness" in terms of supportability, consistency, relationship with the claimant, specialization, and "other factors," and "articulate in the determination or decision how persuasive [the ALJ found] all of the medical opinions . . ." 20 C.F.R. §§ 404.1520c(a)-(c). An ALJ must specifically discuss the factors of supportability and consistency because they "are the most important factors [the ALJ] consider[s] when [they] determine how persuasive" a medical opinion is. *Id.* § 404.1520c(b)(2). Plaintiff contends that the ALJ failed to

meet this burden by not "explain[ing] how the evidence was supportive and consistent with the opinions." (Dkt. No. 11 at 17.)

In his assessment of the medical opinions and prior administrative medical findings, the ALJ found the opinions of state agency medical consultants J. Randall, M.D., and R. Abueg, M.D., persuasive because they "are both supported by a narrative rationale, and these rationales rely on objective medical evidence from the record and other evidence from the record regarding the claimant's functioning," and they are "consistent with the record as a whole"; Elke Lorenson, M.D.'s medical source statement "partially persuasive" because the terminology she relied on "lacks specificity regarding the amount of time during a workday that the claimant could bend and the amount of weight that the claimant could lift or carry," although her opinion was otherwise "not clearly inconsistent with the opinions of Dr. Randall and Dr. Abueg"; the opinions of state agency medical consultants J. Weitzen, Ph.D., T. Inman, Ph.D., and the consultative examination report by Dennis Noia, Ph.D., to be persuasive and "consistent with the record as a whole." (T. at 21.)   The ALJ noted specifically that Drs. Weitzen and Inman's opinions were "both supported by a narrative rationale," which "rel[ied] on objective medical evidence from the record and other evidence from the record regarding the claimant's functioning," and that Dr. Noia's opinion "is supported by his own mental status examination findings" and "consistent with the record as a whole." *Id.*  The ALJ's assessment of the persuasiveness of the medical opinions is, at face value, valid, and "it is not the function of the reviewing court to reweigh the evidence." *Vincent v. Shalala*, 830 F.Supp. 126, 133 (N.D.N.Y. 1993) (citing *Carroll v. Sec'y of Health & Human Serv.s*, 705 F.2d 638, 642 (2d Cir. 1983)).

The ALJ has articulated his consideration of the persuasiveness factor according to the appropriate legal standard. As such, if his analysis is not so unavailing that "a reasonable

factfinder would *have to conclude otherwise,*" his conclusions will stand.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original).  Beginning with the opinions of state agency medical consultants J. Randall, M.D., and R. Abueg, M.D., which the ALJ found persuasive without caveat, both consultants assessed Plaintiff as being capable of work at a medium level of intensity.  (T. at 67, 83, 103-04, 120-21) (citations are to the Disability Determination Explanations in both Plaintiff's Title II and Title XVI applications).  Both consultants assessed Plaintiff as being capable of lifting 50 pounds occasionally; lifting 25 pounds frequently; standing or walking 6 hours in an 8 hour workday; sitting 6 hours in an 8 hour workday; and unlimited pushing or pulling.  (T. at 61-62, 78, 98-99, 115-16.)  The state agency consultants assigned the same postural limitations, including frequently climbing ramps, stairs, ladders, ropes, and scaffolds, frequently stooping, and unlimited balancing, kneeling, crouching, and crawling.  (T. at 62-63, 78-79, 99-100, 116.)  They both assigned an environmental limitation of avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  (T. at 63-64, 79-80, 100, 117.)  In their narrative explanation, both summarized the consultative examination, noted the "mild degenerative spondylosis" observable in Plaintiff's medical imagery, noted his "[m]oderate obstruction and low vital capacity [due to] restriction," and described his ADLs.  (T. at 64-65, 80-81, 101, 118.)  Both concluded by noting "[t]here is no objective evidence to support [claimant's] allegation of his hands[] going numb or [claimant's] back impairment being more than mild in severity," and stating that "[due to claimant's] respiratory disorder he can complete medium work on a sustained basis."  (T. at 65, 81, 101, 118.)

The ALJ justified relying on these opinions because they were supported by "a narrative rationale, and these rationales rely on objective medical evidence from the record and other

evidence from the record regarding the claimant's functioning."  (T. at 21.)  Drs. Randall and

Abueg incorporated medical evidence from Plaintiff's consultative examination, his pulmonary

testing, and his x-rays.  (*See* T. at 64-65, 80-81, 101, 118.)  They also incorporated Plaintiff's

ADLs, and discussed the lack of medical evidence for some of Plaintiff's complaints.  *See id.*

Substantial evidence, therefore, supports the ALJ's assessment of the persuasiveness of these

opinions.  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order)

(stating that "the dispositive question is whether the ALJ's decision was supported by substantial

evidence and grounded in correct legal standards.")

      Next, the ALJ found Dr. Lorenson's opinion "only partially persuasive" because of her

use of unclear terminology in assessing Plaintiff's limitations, but otherwise noted that it was

"not clearly inconsistent with the opinions of Dr. Randall and Dr. Abueg."  (T. at 21.)  The

ALJ's statement that "Dr. Lorenson's opinion is not inconsistent with the residual functional

capacity assessed in this decision" is meaningless for the purpose of a persuasiveness analysis.

*See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293 at *2 (2d Cir. Jun. 17, 2022) (noting

that an ALJ committed procedural error when they did not address an opinion's supportability or

explain how the opinion was consistent with the record, except to conclude that it was.)

However, the ALJ specifically referenced "Dr. Lorenson's unremarkable physical examination

findings, the minimal degenerative changes of the spine shown on diagnostic imaging, and the

lack of longitudinal treatment evidence regarding the claimant's alleged physical disorders."  (T.

at 21.)  In the preceding paragraph, the ALJ also assessed the consistency of Dr. Lorenson's

physical examination findings to the opinions of Drs. Randall and Abueg.  *Id.*  Reading around

the ALJ's "awkward wording," they considered and appropriately assessed the consistency of

Dr. Lorenson's opinion with the objective medical evidence and other medical opinions in the

record.  *Kirk T. v. Comm'r of Soc. Sec.*, 5:21-CV-292, 2022 WL 2753567, at *8 (N.D.N.Y. Jul. 14, 2022) (noting that an ALJ's "awkward wording" can be ignored when their meaning is clear from context.)

During the consultative examination, Dr. Lorenson noted that Plaintiff appeared "to be in no acute distress," presented with a normal gait, used no assistive devices and never required assistance sitting or standing, could squat normally, and was capable of "walk[ing] on heels and toes without difficulty."  (T. at 404.)  Dr. Lorenson noted "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally" during Plaintiff's musculoskeletal examination. (T. at 405.)  However, Plaintiff presented with "[s]ome kyphosis [] in the upper thoracic spine, but no scoliosis or abnormality."  *Id.*  Plaintiff had a full range of motion in his shoulders, elbows, forearms, wrists, fingers, hips, knees, and ankles, without joint deformities, "subluxion, contractures, or ankylosis."  *Id.*  Dr. Lorenson did diagnose Plaintiff with "[b]ack pain."  *Id.*  In the Medical Source Statement section, Dr. Lorenson stated "[n]o gross limitations for sitting, standing, walking, and using the hands. Moderate limitations for bending, lifting, and carrying." (T. at 406.)  The ALJ's reliance on Dr. Lorenson's "unremarkable physical examination findings" is supported by substantial evidence, and his assessment of the consistency of the opinion was made according to the correct legal standard. *Bonet*, 523 F. App'x at 59.

Next, the ALJ assessed the opinions of state agency reviewing psychologists J. Weitzen, Ph.D., and T. Inman, Ph.D., to be persuasive without caveat because they were "supported by a narrative rationale," which relies "on objective medical evidence from the record and other evidence from the record regarding the claimant's functioning," and also that they were "consistent with the record as a whole, given the lack of longitudinal mental health treatment evidence in the record."  (T. at 21.)  Regarding the lack of longitudinal mental health treatment

evidence, an ALJ is "entitled to rely not only on what the record says, but also on what it does

not say." *Diaz*, 59 F.3d 307 at 315 (quoting *Dumas*, 712 F.2d at 1553).

Dr. Weitzen noted that Plaintiff has no history of emergency psychiatric hospitalizations,

a limited history of psychiatric treatment ending in 2013, and no current psychiatric treatments or

medication. (T. at 59, 75.) Dr. Weitzen acknowledged that Plaintiff reports waking "eight to ten

times at night," and that he "gets 'a little depressed.'" *Id.* (quoting T. at 393.) Dr. Weitzen also

considered Plaintiff's ADLs, which he stated were limited by "medical problems." *Id.* Dr.

Weitzen could not establish the existence of a medically determinable psychiatric impairment.

*Id.* Dr. Inman's opinion largely mirrors Dr. Weitzen's: Dr. Inman reviewed Plaintiff's history of

psychiatric treatment, which terminated in 2013, and noted that Plaintiff is not currently in

treatment or receiving medication. (T. at 95, 112.) Dr. Inman also could not establish the

existence of a medically determinable psychiatric impairment. *Id.* The ALJ's assessment of the

persuasiveness of these opinions is therefore supported by substantial evidence and clear of legal

error, so it will be upheld. *Bonet*, 523 F. App'x at 59.

Finally, the ALJ found the opinion of Dennis Noia, Ph.D., persuasive without caveat.

The ALJ noted that Dr. Noia's opinion is "supported by his own mental status examination

findings" and "consistent with the record as a whole, given the lack of longitudinal mental health

treatment evidence." (T. at 21.) Dr. Noia recorded that Plaintiff "denies any suicidal or

homicidal ideation," that "he gets 'a little depressed'" but that "it is 'not too bad' and that he is

able to deal with it on his own." (T. at 393.) Plaintiff was "cooperative," with adequate

"[m]anner of relating, social skills, and overall presentation." (T. at 394.) Dr. Noia noted that

Plaintiff's "thought processes were coherent and goal directed with no evidence of delusions,

hallucinations, or paranoia in the evaluation setting," that "his affect was full range and

appropriate to speech and thought content," and his mood, sensorium, orientation, attention and concentration, recent and remote memory skills, cognitive functioning, insight, and judgment were all unremarkable.  (T. at 394-95.)  In his medical source statement, Dr. Noia noted "[t]he results of the examination do not appear to be consistent with any psychiatric problems that would interfere with his ability to function on a daily basis."  (T. at 395.)  In a section titled "Recommendations," Dr. Noia stated "[n]o psychiatric recommendations appear to be warranted at the present time."  (T. at 396.)

The ALJ applied the correct legal standards to his analysis of the persuasiveness of the medical opinions, and "'a searching review of the record' assures us 'that the substance of the [regulation] was not traversed'."  *Loucks*, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022)) (alteration in original).  Since the ALJ's assessment was made according to the correct legal standards, and supported by substantial evidence, there is no reversible error here.  *Bonet*, 523 F. App'x at 59.

### C.  The Consulting Physicians' Reference to Prior Applications Does Not Present Grounds for Remand.

While the ALJ properly analyzed the persuasiveness of the opinions of the state agency medical consultants, he did not adopt the total content of the initial and reconsideration-level denials as his own opinion.  As an initial matter, the ALJ did not adopt the state agency reviewing physicians' comments pertaining to Plaintiff's work history.  (*See* T. at 22.)  The state agency reviewing physicians' noted, regarding Plaintiff's prior claims, "denied 2/2019; dismissed [at] hearing level [due to] [claimant] being unresponsive[.] review[ed] past files for work [history]; [claimant] worked over [the level of substantial gainful activity] in 2013, 2014[.] psych [consultative examination] current claim- stated mechanic year left [due to] medical problems [approximately] 2019[.] [claimant] has [past relevant work.]"  (T. at 58, 74.)  The state

agency reviewing physicians also noted "2017 claim, non severe psych, severe copd and back disorders[.]"  (T. at 64, 80, 101, 118.)  There is no evidence that the ALJ relied on these references to prior applications in his decision.  Indeed, the ALJ expressly based his findings about past relevant work on Plaintiff's Detailed Earnings Query (T. at 298-306), Plaintiff's Disability Report (T. at 307-13), and Plaintiff's testimony at the administrative hearing (T. at 32-38.)  (T. at 22 )

In addition, any error in relying on the opinions of the state agency reviewing physicians was harmless.  The statement "2017 claim, non severe psych, severe copd and back disorders" was endorsed by Drs. Randall and Abueg as part of the additional explanation for Plaintiff's physical RFC.  (T. at 64-65, 80-81, 101, 118.)  Drs. Weitzen and Inman, the state agency doctors whose opinions form the Psychiatric Review Technique section of Plaintiff's Disability Determination Explanations, did not endorse that statement or otherwise reference earlier contact between Plaintiff and the SSA.  (*See* T. at 58-59, 75, 95-96, 112-113.)  Drs. Weitzen and Inman lay out exactly what evidence, or lack of evidence, they considered in explicit detail.  *See id.* Drs. Randall and Abueg's mention of "non severe psych" in a prior claim did not have any effect on Drs. Weitzen and Inman's analysis in the present claim.  (T. at 64-65, 80-81, 101, 118.)  The Psychiatric Review Technique sections are, therefore, free from potential error.  There is potential error in Drs. Randall and Abueg's consideration of "severe copd and back disorders" in earlier claims, but the prejudicial influence of extra-record evidence in that instance would benefit Plaintiff, since a finding of severe medically determinable impairments would work in favor of his current disability claim.  (T. at 64-65, 80-81, 101, 118.)

Drs. Randall and Abueg assessed Plaintiff as having a severe "Chronic Respiratory Disorder[]" and a non-severe "Disorder[] of the Skeletal Spine."  (T. at 58, 74, 95, 112.)  Their

assessment of Plaintiff's spinal disorder as non-severe is fully explained without reference to extra-record evidence: Drs. Randall and Abueg relied on Plaintiff's x-rays, which demonstrate "mild degenerative spondylosis," as well as the generally good results of Plaintiff's consultative examination, his ADLs, and a lack of medically verifiable evidence to fully support his complaints of pain.  (T. at 64-65, 80-81, 101, 118.)  Despite this, the ALJ did not actually adopt Drs. Randall and Abueg's findings about Plaintiff's spine condition.  (*See* T. at 17.)  The ALJ determined that Plaintiff's "mild degenerative spondylosis of the lumbosacral spine" was severe, crediting his subjective reports of pain and "arthritis in his back."  (T. at 17-18.)  Assuming that the state agency reviewing doctors actually considered the substance of Plaintiff's prior claims, the portions of their opinions which the ALJ relied on are either free from error or erroneous in favor of Plaintiff, in which case the ALJ's error was harmless.

In any case, the ALJ's conclusions are supported by substantial evidence and Plaintiff has not identified a "specific record that was missing, much less explain[ed] how it would have affected [his] case."  *Reices-Colon v. Astrue*, 523 F. App'x. 796, 799 (2d Cir. 2013).  Plaintiff has also not addressed how prior applications for Social Security benefits filed in 2012 and 2016 would be relevant to Plaintiff's current application, with an alleged onset date of December 31, 2019.  (T. at 54.)  "In general, [a claimant is] responsible for providing the evidence [the SSA] will use to make a finding about [a claimant's] residual functional capacity."  20 C.F.R. § 404.1545(a)(3).  While "[the SSA] is responsible for developing your complete medical history, … and making every reasonable effort to help you get medical reports from your own medical sources," the record before the ALJ, and now before the Court, is not "sparse"; "there was a complete record before the ALJ consisting of medical opinions, treatment notes, and test results," as well as Plaintiff's own testimony.  *Id.*; *Schillo v. Kijakazi*, 31 F.4th 64, 76 (2d Cir. 2022)

(citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).  To summarize, Plaintiff did not object to the evidentiary record at the time of the hearing, has not provided copies of the missing records or explained how their contents might have changed the ALJ's decision, the state agency reviewing psychologists did not reference the extra-record evidence, the state agency reviewing physician's opinions exclusively cite evidence presently available in the administrative record, and their error, if any, would accrue to Plaintiff's benefit.

## VI.    CONCLUSION

Considering the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**; Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED;** Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED** and the Complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 26, 2024
　　　　 Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge